OPINION
{¶ 1} Robert Smith, Jr. was found guilty by a jury in the Montgomery County Court of Common Pleas of two counts of rape, one count of attempted rape, one count of kidnapping, and one count of aggravated burglary. He was sentenced accordingly. Smith appeals from his convictions and sentences, raising two assignments of error.
 {¶ 2} I. "THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF TWO COUNTS OF RAPE, AGGRAVATED BURGLARY, KIDNAPPING, AND ATTEMPTED RAPE."
 {¶ 3} Smith claims that his convictions were not sufficiently supported by the record and were against the manifest weight of the evidence. A brief recitation of the evidence presented at trial will be helpful to our discussion of this assignment of error.
 {¶ 4} The victim, a twenty-nine year old woman, testified that she had a romantic relationship with Smith for several months in late 2004, but she ended the relationship in December and obtained a protective order against him. Nonetheless, Smith continued to call her frequently. During the week of January 24, 2004, the victim saw Smith loitering by her son's school bus stop twice. As a result of this behavior, the victim called Smith on Thursday, January 27, 2005, despite the protective order, to attempt to resolve matters between them. The victim agreed to have dinner with Smith. She admitted at trial that she still cared about Smith despite their turbulent past. The victim met Smith on Thursday night, and they engaged in consensual sex that evening.
 {¶ 5} The victim and Smith also planned to meet for dinner on Saturday. During that dinner, the victim received a call on her cell phone from another man, which made Smith angry. The victim, in turn, got upset because Smith was acting "crazy" over the telephone call, and the two went home separately.
 {¶ 6} According to the victim, Smith repeatedly called her cellular phone throughout Saturday night and all day Sunday, January 30. Anticipating that Smith would eventually show up at her apartment, the victim and her son left the apartment on Sunday morning and went to her mother's house. Sunday evening, however, after plans with a friend had fallen through, the victim decided to go back to her apartment and get the confrontation with Smith "out of the way" because she "knew he would be there." Indeed, Smith was there, although the victim did not see him right away. As she entered her apartment building, Smith ran at her across the courtyard and pushed the victim inside her apartment, pulling on her bag and asking where she had been.
 {¶ 7} Once they were inside the apartment, Smith grabbed the victim's keys and cell phone, ripping her coat. She did not have a land-based telephone line at her apartment. The victim tried to talk Smith into leaving the apartment with her to get cigarettes as a way of diffusing the situation. He agreed and gave the car keys back to her. As Smith started to walk toward the back of the victim's apartment, she ran from the building to her car and began to pull away. Smith chased after her and jumped onto the trunk of the car. When the victim stopped the car, Smith jumped in the back seat and grabbed the victim's hair. She reparked the vehicle, and they reentered her apartment.
 {¶ 8} Back in the apartment, Smith threw the victim onto the bed, ripped her shirt open, and began to pull her pants off. He "grabbed [her] vagina with his fingernails" until she stopped fighting him, and then he vaginally raped her. Afterward, the victim remained on the bed. When Smith got on top of her again, she told him that she did not want to have sex with him and "wanted a man that's going to treat [her] right." Smith then forced her onto her stomach and vaginally raped her again. The victim testified that she did not struggle this time because she was exhausted.
 {¶ 9} After these events, Smith and the victim remained in her bedroom. She stated that she did not try to leave because "it was so many times that this type of thing had happened, [she] just stayed there and wanted it to be over. [She] was waiting on the next day." The victim testified that, throughout the night, when she would start to fall asleep, Smith would pull the covers off of her and try to start an argument. At one point, he rolled her on her back, sat on her arms, and tried unsuccessfully to force her to have oral sex with him.
 {¶ 10} When it got light in the morning, the victim went into the bathroom, and Smith followed. The victim testified that Smith threw her against the door, bent her over the sink, and tried to rape her from behind. As she struggled, he grabbed her vagina and rectum with his fingernails. She screamed, and he let her get up. A physical altercation ensued during which Smith threatened the victim with a knife from the kitchen, threw her on the bed, and bit her on the chest and face. She hit him several times on the head with a lamp, and he threw the victim into a television stand, which caused the blinds to fall off a nearby window. Just then, they both saw the victim's mother pulling up to the apartment. The woman yelled at Smith through the window to get off of the victim, and the victim told her mother to go to the apartment office to call the police. As the woman did so, Smith fled through an apartment window.
 {¶ 11} At trial, the victim admitted that she had initially lied to the police about her encounters with Smith in the days before the rapes because she feared she would be in trouble for having contacted him while a protective order was in place. For the same reason, she also lied about whether her son had been with her when she had been with Smith. She also knew that her family would disapprove of her contact with Smith.
 {¶ 12} The victim went to Good Samaritan Hospital, and a rape kit was completed. An abrasion was noted near her rectum, but no other evidence of trauma was found.
 {¶ 13} The defense did not call any witnesses at trial.
 {¶ 14} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. In considering the sufficiency of the evidence, the pivotal question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 15} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 16} With respect to the rape, Smith contends that his conviction was supported by insufficient evidence and was against the manifest weight of the evidence because none of the physical evidence was inconsistent with consensual sexual intercourse. With respect to the kidnapping, Smith contends that, by the victim's own admission, she went to the bedroom on her own and did not attempt to leave the apartment during the course of the night. He also points to the lies that the victim had told to the police as impugning her credibility.
 {¶ 17} The victim's testimony provided ample evidence from which a rational trier of fact could have found the essential elements of rape, attempted rape, and kidnapping proven beyond a reasonable doubt. The victim's accounts of the rapes were uncontradicted. As for the kidnapping, although the victim did not attempt to flee after she and Smith had entered the apartment the second time, the surrounding circumstances suggested that the victim stayed due to the threat of physical harm. As such, these convictions were supported by sufficient evidence.
 {¶ 18} The credibility of the victim's testimony was for the jury to determine. As we have noted, that testimony was undisputed. The absence of medical evidence of substantial physical trauma to the victim did not preclude the jury from believing the victim's account. Moreover, it was within the province of the jury to assess the victim's explanation of her misstatements to the police and her perception of the threat posed by Smith. The jury did not lose its way and create a manifest miscarriage of justice in convicting Smith of the rapes, attempted rape, and kidnapping.
 {¶ 19} Smith also claims that his aggravated burglary conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. He claims that the state failed to prove that he forced his way into the victim's apartment with purpose to commit any criminal offense. See R.C.2911.11. Specifically, he seems to admit that the evidence supported a finding of forceful entry into the apartment when he first arrived, but he points out that he was not alleged to have committed any criminal offense in the apartment at that time. Then, he and the victim left. When they returned, Smith claims that the evidence did not establish any use of force to enter the apartment, although criminal offenses were alleged to have occurred there.
 {¶ 20} In view of the surrounding circumstances, the jury could have reasonably concluded that Smith had used force to reenter the victim's apartment, although she seems to have walked to the apartment and opened the door under her own power. After Smith forced his way into her apartment, took her cell phone and keys, and ripped her coat, the victim persuaded him to let her get some cigarettes. When he returned her car keys, the victim attempted to flee. She stopped when Smith threw himself onto her car, jumped into the back seat, and pulled "hard" on her hair. He then accompanied her back into the apartment. Under these circumstances, the jury could have reasonably concluded that Smith, given his violent treatment of the victim upon entering the apartment the first time and as she attempted to flee, had forced his way into the apartment the second time as well as the first time. See R.C. 2901.01(A)(1), defining "force" in part as "any violence * * * exerted by any means upon or against a person * * *." In other words, the jury could have reasonably found that Smith was unwelcome in the victim's apartment, and, but for his violent treatment of her, he would not have been able to gain entry. As such, the jury could have found the essential elements of aggravated burglary to have been established beyond a reasonable doubt, and the aggravated burglary conviction was not against the manifest weight of the evidence.
 {¶ 21} The first assignment of error is overruled.
 {¶ 22} II. "THE TRIAL COURT'S SENTENCE OF APPELLANT MUST BE VACATED."
 {¶ 23} In his second assignment of error, Smith challenges the imposition of non-minimum sentences for his aggravated burglary and kidnapping convictions and maximum sentences for his rape and attempted rape convictions based on findings made by the judge, rather than the jury. The state concedes that, in light of the supreme court's recent decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 245 N.E.2d 470, Smith's argument has merit. Foster held that parts of Ohio's felony sentencing scheme are unconstitutional, including R.C. 2929.14(B) and (C), which required judicial factfinding before imposition of non-minimum and maximium sentences. Id., following Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, and Apprendiv. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435. Because Foster held the statutes under which Smith's sentences were imposed to be unconstitutional and severed them from the sentencing provisions of the Revised Code, we must reverse his sentence and remand this case for a new sentencing hearing. Foster, at ¶ 104-105.
 {¶ 24} The second assignment of error is sustained.
 {¶ 25} Except with respect to the sentence, the judgment of the trial court will be affirmed. The matter will be remanded for resentencing in accordance with Foster.
Donovan, J. and Walters, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).